# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

CARASUE R.,

                                        Plaintiff,

          v.                                                      1:23-CV-775
                                                                  (BKS/MJK)

MARTIN J. O'MALLEY,

                                        Defendant.

---

MELISSA KUBIAK, ESQ., for Plaintiff
JASON PECK, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE BRENDA K. SANNES, Chief United States District Court
Judge:

## REPORT-RECOMMENDATION

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. §
405(g), seeking judicial review of a final decision of the Commissioner of Social
Security, denying her application for benefits.  Plaintiff did not consent to the
jurisdiction of a Magistrate Judge (Dkt. No. 5), and this matter was therefore referred to
me for Report and Recommendation by Chief United States District Court Judge
Brenda K. Sannes, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  Both parties
filed briefs, which the court treats as motions under Federal Rule of Civil Procedure
Rule 12(c), in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On March 4, 2021, plaintiff protectively filed an application for Disability
Insurance Benefits ("DIB"), alleging disability beginning March 22, 2019.

1

(Administrative Transcript ("T") 74, 216-17).  Plaintiff's application was denied initially on June 29, 2021 (T. 74, 120-26), and upon reconsideration on January 18, 2022 (T. 95, 134-47).  On June 8, 2022, Administrative Law Judge ("ALJ") Kieran McCormack conducted a hearing during which plaintiff and vocational expert ("VE") Robert Baker testified.  (T. 35-73).  On June 27, 2022, the ALJ issued a decision denying plaintiff's claim.  (T. 8-27).  This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 28, 2023.  (T. 1-5).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

2

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

3

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   **THE ALJ'S DECISION**

The ALJ first determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 22, 2019. (T. 14). Next, the ALJ found that plaintiff has the following severe impairments: degenerative change of the left knee; degenerative change of the lumbar spine; lumbar radiculopathy; left superficial peroneal sensory neuropathy; obesity; asthma; depressive disorder; anxiety disorder; and bipolar disorder. (*Id.*). At the third step, the ALJ

determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 15-17).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except that the [plaintiff] can climb ladders, ropes, or scaffolds and crawl on an occasional basis. She can stoop and crouch on a frequent basis. She can work at jobs without concentrated exposure to airborne irritants such as fumes, odors, dusts, gases and /or smoke. She can also work at low stress jobs, defined as jobs containing no more than simple, routine, and repetitive tasks, involving only simple work related decisions; with no more than occasional workplace changes; and where there is only occasional interaction with supervisors, coworkers, and /or the general-public.

(T. 17).

In making the RFC determination, the ALJ considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T. 17). The ALJ further considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 404.1520(c). (T. 17-18). After considering plaintiff's statements regarding her symptoms, along with the other evidence of record, the ALJ concluded that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." (T. 18). The ALJ engaged in further analysis, which the court will discuss below in conjunction with the plaintiff's arguments. (T. 18-24).

The ALJ then determined that plaintiff was unable to perform any past relevant work. (T. 25). However, the ALJ did determine that there were other jobs that exist in

significant numbers in the national economy that plaintiff could perform.  (T. 25-26).
Accordingly, the ALJ ruled that plaintiff was not disabled from March 22, 2019 through
the date of the decision.  (T. 26).

## IV.    ISSUE IN CONTENTION

Plaintiff argues that the ALJ "failed to properly evaluate the disability-supporting
opinions of Dr. Kishore and Dr. Murphy," to the extent that the ALJ (1) failed to
adequately discuss the consistency and supportability factors, (2) failed to acknowledge
the consistency between the two opinions, and (3) failed to acknowledge a significant
amount of Dr. Kishore's treatment history that supported the provider's opinion.
(Plaintiff's Brief ("Pl's Br.") at 18-24) (Dkt. No. 11).  Defendant contends that the
Commissioner's determination should be affirmed because substantial evidence
supports the reasons the ALJ gave when determining the persuasiveness Dr. Kishore
and Dr. Murphy's medical opinions.  (Defendant's Brief ("Def.'s Br.") at 4-13) (Dkt.
No. 16).  For the following reasons, this court agrees with the plaintiff that the ALJ
failed to sufficiently evaluate the medical opinions of record concerning plaintiff's
mental impairments, particularly those opinions of Dr. Murphy and Dr. Kishore.  As a
result, the ALJ's step three and step four determinations, and his ultimate finding that
plaintiff was not disabled, were tainted. The court therefore recommends remand for
further administrative proceedings to properly evaluate the persuasiveness of the
medical opinion evidence, develop the record as is determined necessary, and reach an
RFC determination that is supported by substantial evidence.

**DISCUSSION**

### V. THE ALJ'S ASSESSMENTS OF DRS. MURPHY AND KISHORE'S OPINIONS WERE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

On May 20, 2021, Alison Murphy, Ph.D. prepared a written opinion based on her consultative psychiatric examination of plaintiff, performed at the request of the Commissioner. (T. 581-85). After taking plaintiff's medical and social history, and upon examination, Dr. Murphy observed plaintiff to be cooperative, with adequate manner of relating, social skills and overall presentation. (T. 582). Plaintiff's speech was fluent, and her thought processes coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting. (T. 583). Dr. Murphy also observed plaintiff's affect to be full range and appropriate, and mood "okay," per plaintiff's report. (*Id.*). She further observed plaintiff's attention and concentration, as well as memory skills, to be mildly impaired, "due to anxiety or nervousness in the evaluation." (*Id.*). Based on her interview and examination, Dr. Murphy opined that plaintiff could understand, remember, or apply simple and complex instructions with no evidence of limitation, and use reason and judgment to make work-related decisions with moderate limitations. (*Id.*). Dr. Murphy assessed that plaintiff had marked limitations for interacting adequately with supervisors, coworkers and the public; sustaining an ordinary routine and regular attendance at work; and regulating emotions, controlling behavior, and maintaining well-being. (*Id.*).

7

The ALJ considered Dr. Murphy's examination findings in his written decision, concluding that the opinion was "generally persuasive." (T. 23). The ALJ went on to state that Dr. Murphy's opinions were "supported by, and consistent with, her own mental status examination of plaintiff as well as the rest of the psychiatric evidence of record." (*Id.*). He noted that "these opinions were factored into the [plaintiff's RFC]." (*Id.*). The ALJ then qualified his statement, stating that, "[h]owever, the opinion regarding the marked limitations is not persuasive, as it is inconsistent with the preponderance of the unremarkable clinical findings in the psychiatric evidence of record[;]" citing to various exhibits purportedly supporting his conclusion to this effect. (*Id.*). The ALJ further stated that Dr. Murphy's opinion for marked limitations was inconsistent with the opinions for moderate psychiatric limitations rendered by the state agency medical consultants, who reviewed Dr. Murphy's opinion, and "specifically refuted [it] as being inconsistent with the objective examination and treating source records." (*Id.*).

Elsewhere in the decision, the ALJ indicated that "limiting the [plaintiff] to working at low stress jobs, performing simple, routine and repetitive tasks accounts for the deficits in memory and attention as per [Dr. Murphy's] testing." (T. 19). Furthermore, it appears that plaintiff underwent another psychiatric consultative examination approximately eight months after Dr. Murphy issued her opinion. On January 8, 2022, Jeanne Villani, Psy.D. opined that, based on her examination and interview, plaintiff had no limitation for sustaining an ordinary routine and regular attendance at work; mild to moderate limitations in using reason and judgment to make

8

work related decisions, regulate emotions, control behavior and maintain well-being; and mild limitations for interacting adequately with supervisors, coworkers, and the public. (T. 743). The ALJ also found this opinion to be "generally persuasive," noting that "[t]his opinion has been considered in formation of the [plaintiff's] residual functional capacity." (T. 24). The ALJ further indicated that the results of Dr. Villani's examination indicated "functional stability," compared to the record as a whole. (T. 20).

In addition to the above referenced medical sources, the ALJ considered the medical source statement prepared by plaintiff's long-time[1] treating psychiatrist Pankaj Kishore, M.D. In a check-box form opinion dated May 25, 2022, Dr. Kishore opined that plaintiff was markedly limited in her ability to interact appropriately with the public, supervisors and/or coworkers. (T. 905). She also found that plaintiff was markedly limited in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*).

The ALJ concluded that Dr. Kishore's opinions were unpersuasive. (T. 24). He noted that Dr. Kishor's treatment records dated since the alleged onset date

> reveal[ ], but for notations regarding subjective reports, as well as notations regarding preoccupied thoughts on three occasions . . . all mental status examinations of the [plaintiff] . . . were unremarkable and normal.

(T. 24). Thus, the ALJ concluded, Dr. Kishore's opinion was not "consistent with, or supported by, the vast preponderance of the clinical findings contained in his records . .

---

[1] Plaintiff reported to Dr. Murphy that she had treated with Dr. Kishore since 2011. (T. 581).

. .'' (*Id.*).  The ALJ further concluded that Dr. Kishore's opinion was "inconsistent with the vast preponderance of the clinical findings in the rest of the evidence, whi[ch] likewise reveal continuing unremarkable psychiatric clinical findings [ ]." (*Id.*).  The ALJ then noted that Dr. Kishore's opinion was inconsistent with Dr. Villani's opinion. (*Id.*).  Finally, the ALJ considered the fact that, despite being asked to provide factors and clinical findings as support, Dr. Kishore declined to do so.  (*Id.*).

Because plaintiff's application for benefits was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case. 20 C.F.R. § 404.1520c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule"). An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability and consistency of those opinions. 20 C.F.R. § 404.1520c(b).

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative

medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1). "[T]he strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)); *see Rivera v. Comm'r of Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *16 (S.D.NY. Dec. 30, 2020) (noting that supportability "has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support [his or] her opinion") (quoting 20 C.F.R. § 404.1520c(c)(1)).

The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2). Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vellone v. Saul*, 2021 WL 319354, at *6 (citing 20 C.F.R. § 404.1520c(c)(2)).

The ALJ also may, but is not required to, explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion. 20 C.F.R. § 404.1520c(c).

11

An ALJ's failure to explain the supportability and consistency of the medical opinions in the record is procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *see also Loucks v. Kijakazi*, No. 21-CV-1749, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, the Second Circuit has recently clarified that an ALJ's procedural error in failing to explain how he or she "considered the supportability and consistency of medical opinions in the record" does not necessarily preclude affirmance of the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2. As the *Loucks* decision explained, it is well-settled that "[d]espite [an] ALJ's procedural error," a reviewing court can affirm if "a searching review of the record assures [the court] that the substance of the [regulation] was not traversed." 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96). Thus, while a reviewing court may not affirm the Commissioner's decision based on an impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole. *See, e.g. John L.M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2-3 (N.D.N.Y. August 18, 2022); *Ricky L. v. Comm'r Soc. Sec.*, No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022).

Plaintiff contends that the ALJ's evaluation of Dr. Murphy and Dr. Kishore's opinions was not supported by substantial evidence, and the court agrees. While the ALJ is certainly within his authority to accept certain medical opinions and not accept

others, *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), he must provide a reasoned explanation for doing so and may not simply "pick and choose" those medical opinions that support his conclusions. *See Regina M. v. Comm'r of Soc. Sec.,* No. 5:21-CV-0295 (NAM), 2022 WL 1541300, at *6 (N.D.N.Y. May 16, 2022) ("[I]t is . . . well-settled that the ALJ 'cannot pick and choose evidence in the record that supports [his] conclusions.' ") (citation omitted); *Stephanie K. v. Comm'r of Soc. Sec.*, No. 6:20-CV-06838, 2022 WL 806630, at *3 (W.D.N.Y. Mar. 17, 2022) (" 'Cherry picking [evidence] can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both.' ") (citations omitted); *Luke H. v. Saul*, No. 3:19-CV-720 (DJS), 2020 WL 4346789, at *3 (N.D.N.Y. July 28, 2020) ("Cherry picked decisions do not satisfy substantial evidence standards because reviewing courts cannot conclude, under such circumstances, that adverse findings were based on evidence reasonable minds might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted).

In this instance, the court cannot conclude that the ALJ's reasons for discounting the marked limitations opined by plaintiff's long-time treating provider and a consultative examiner were adequate.  In the context of mental illness, the Second Circuit has cautioned against relying on isolated mental status exams to draw conclusions about a patient's abilities. *See, e.g., Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (explaining that mental status exams only reveal the patient's mental state "at the time of the examination and do not consider symptoms the patient may experience outside of that brief period of time"). Rather, particularly with

mental illness, it is important to assess the patient's symptoms over time.  This is particularly true in cases such as this, given the episodic nature of bipolar disorder.  *See Marcano v. Comm'r of Soc. Sec.*, No. 20-CV-4230, 2021 WL 5315703, at *20 (S.D.N.Y. Nov. 16, 2021) ("But the fact that some mental status exams were normal ignores, "[t]he very nature of bipolar disorder . . . that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." ),*report and recommendation adopted*, 2022 WL 253083 (S.D.N.Y. Jan. 26, 2022) (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)); *Estrella v. Berryhill*, 925 F.3d at 97 (recognizing that "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence," and holding that it is legal error for an ALJ to focus only on areas of improvement) (citation omitted).

"Further, it has been recognized that subjective reports are particularly important in cases involving mental impairments due to the difficulty of observing the symptoms of such impairments, and that the use of objective testing or 'evidence based screening tools' is not necessary."  *Laurie M. K. v. Comm'r of Soc. Sec.*, No. 3:22-CV-0947 (GTS/DEP), 2023 WL 7004934, at *7 (N.D.N.Y. Sept. 1, 2023), *report and recommendation adopted*, 2023 WL 7003931 (N.D.N.Y. Oct. 24, 2023) (quoting *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 9 (2d Cir. 2020) (stating that the "expectation that a psychological opinion be formed only after diagnostic testing is unrealistic," especially "in cases involving mental health, which tend to be less susceptible to objective testing and assessment")).

14

Against this backdrop, the ALJ's consideration of both Dr. Murphy and Dr. Kishore's opinions cannot withstand scrutiny. With respect to Dr. Murphy, the ALJ discredited her opinion for marked limitation by citing to inconsistencies with "unremarkable clinical findings," without further qualification of this general characterization. (T. 23). Moreover, many of the records that the ALJ cites to in support of this contention are, as plaintiff points out, brief references to psychiatric observations taken from examinations performed by plaintiff's non-mental health treating sources. (*Id.*). The remaining records appear to be cherry-picked mental status examinations from Dr. Kishore which, arguably, reflect plaintiff's "good days." (*Id.*).

The ALJ's reasons for discounting the opinion of Dr. Kishore are equally unavailing, and fail to reflect a reasonable application of the governing regulations. The ALJ rejected Dr. Kishore's opinion in part because, *other than* the "notations regarding plaintiff's subjective reports," he concluded that virtually "all mental status examinations of the [plaintiff]" by Dr. Kishore were "unremarkable and normal." (T. 24). The ALJ does not discuss any of the specific records, however, and it is unclear what portions of the mental examinations by Dr. Kishore he attributes to "notations regarding plaintiff's subjective reports," as opposed to "clinical findings." However, based on this court's review of the same records, this representation, without adequate explanation, appears to be an over-simplification of the plaintiff's presentation and mental functioning,[2] and does not constitute an adequate basis for discounting Dr.

---

[2] *See* T. 549 (Mental Status Examination ("MSE") indicating plaintiff was tearful several times during the session, with depressed affect, normal speech, and preoccupation with negative thoughts); T. 545 (MSE indicating plaintiff cried several times during the session, with depressed

Kishore's marked opinions. Moreover, as previously discussed, the ALJ's categorical disregard for Dr. Kishore's "notations regarding subjective reports" is in contravention to Second Circuit jurisprudence. *See Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x at *9 (finding error in the ALJ's rejection of the treating physician opinion for being largely based on self-reported symptoms because that rationale "ignores that Tobias's opinion was presumably formed not just based on what Stacey told her, but also on her firsthand observations of Stacey's behavior and affect over the course of dozens of meetings spanning several years"); *Green-Younger v. Barnhart,* 335 F.3d 99, 107 (2d Cir. 2003)(doctor's reliance on subjective complaints "hardly undermines his opinion as to her functional limitations, as '[a] patient's report of complaints, or history, is an essential diagnostic tool.' ") (quoting *Flanery v. Chater,* 112 F.3d 346, 350 (8th Cir. 1997)).

The ALJ also erred in failing to discuss the consistencies between Dr. Kishore and Dr. Murphy's restrictive opinions.  The courts in this Circuit have recognized that an ALJ should not consider the persuasiveness of each medical opinion "in a vacuum," but must adequately account for the consistency of the various opinions with each other. *See Mallorie M. v. Comm'r of Soc. Sec.*, No. 3:21-CV-891 (MAD/ATB), 2022 WL 19078137, at *12 (N.D.N.Y. Dec. 22, 2022) (collecting cases), *report-recommendation*

---

affect, normal speech, relevant thought processes and preoccupation with stressors); T. 541 (MSE indicating plaintiff behavior was tense and restless, with a depressed and tearful affect. Preoccupied with stressors); T. 527 (MSE indicating plaintiff was anxious and sounded on the verge of crying during telephone session.  Plaintiff was having a hard time describing the problem, but did "calm down somewhat and engaged better" as the session progressed.  Affect was depressed and anxious.)

16

*adopted*, 2023 WL 2563209 (N.D.N.Y. Mar. 17, 2023); *Ingrid T.G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-5651, 2022 WL 683034, at *8 (S.D.N.Y. Mar. 8, 2022) (". . . in finding the assessments of disabling pain and phobias unpersuasive, the ALJ was required to address and account for the fact that the treating providers were united in their belief that Plaintiff's symptom experience was plausible, pervasive, and preclusive of sustained work activity."); *see also Gary F. v. Comm'r of Soc. Sec.*, 2022 WL 16540354, at *3 (W.D.N.Y. October 28, 2022) (finding ALJ erred when he "did not even acknowledge the substantial similarities between" two opinions). Here, the ALJ, at base, failed to recognize the consistency between Dr. Murphy's opinion that plaintiff had marked limitations in social interaction with the identical opinion rendered by Dr. Kishore, and discuss what impact this had on his overall evaluation of the record. (T. 584, 905).

Consistent with the Second Circuit's instructions, this court has conducted a "searching review" of the record, and still recommends remand. Both Drs. Kishore and Murphy found plaintiff to be markedly limited in her capacity for social interaction. (T. 584, 905). The record documents several instances of plaintiff having difficulty getting along with the people around her, even to the extent that it affected her ability to maintain employment. *See, e.g.,* T. 541 (reporting she walked out of her workplace and quit because colleague was harassing her); T. 535 (reporting conflicts with her daughter which trigger feelings of anger); T. 533 (reporting getting involved in a family conflict that included her husband, daughter, brother, brother's girlfriend, and nephew); T. 529 (reporting argument with her brother's friend who was bringing alcohol into the house,

and observing that her reaction was more than required); T. 527 (reporting that she is dealing with serious conflicts within her family and having a hard time handling them); T. 564 (reports having argument with her daughter which resulted in her being taken to the hospital for psychiatric care, which she ultimately declined after the police were called); T. 841 (reporting she is quick to anger and her reactions are exaggerated); T. 839 (reporting her relationship with her daughter is impaired).  Without further explanation by the ALJ, it is unclear why these reports of conflict would not serve as evidence supporting Dr. Kishore and Dr. Murphy's opinions, notwithstanding the fact they were reported by plaintiff.

Moreover, Dr. Murphy found plaintiff to be markedly limited in her ability to regulate her emotions, control her behavior, and maintain well-being, and Dr. Kishore opined that plaintiff would be markedly limited in her ability to respond appropriately to usual work situations and changes in a routine work setting.  (T. 584, 905).  The ALJ failed to discuss how such limitations are reflected, at least to some extent, in the records evidencing plaintiff's continued reported efforts to maintain employment and her apparent inability to do so; in addition to discussing what extent her symptoms and the side effects of her medication impacted her apparent inability to maintain employment.  (*See, e.g.,* T. 538, 539, 541, 543, 544, 545, 546, 548, 549, 552, 555, 557, 559, 560, 561).  Nor did the ALJ address that Dr. Kishore's restrictive opinion was consistent with her recommendation during the period of alleged disability that plaintiff "stay off work," and her inability to deal with issues concerning a family business.  (T. 526, 537, 538).  The ALJ's statement that plaintiff "quit her job due to long hours and

18

commute as well has having to handle difficult customers, not due to symptomatic concerns" (T. 18), is simply an unfair interpretation of the record.

Accordingly, this court recommends remand to allow the ALJ to explain the supportability and consistency factors more fully with regard to the mental health opinion evidence, and to further develop the record as appropriate. *See Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020)("If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required."), *report recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **GRANTED**; and it is further

**RECOMMENDED**, that defendant's motion for judgment on the pleadings (Dkt. No. 16) be **DENIED**; and it is further

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED**, and this action be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of*

*Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 18, 2024

Mitchell J. Katz
U.S. Magistrate Judge

20